FRATERNAL ORDER OF POLICE, CAPITAL CITY LODGE NO. 9, APPELLEE, *v.* CITY OF COLUMBUS, APPELLANT.

(No. 81AP-977—Decided March 24, 1983.)

*Messrs. Sheward & Weiner, Mr. Samuel B. Weiner* and *Mr. Gerald J. Todaro,* for appellee.

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Patrick M. McGrath* and *Mr. Donald R. Keller,* for appellant.

STRAUSBAUGH, J. This is an action in declaratory judgment which arose as a result of a complaint filed by plaintiff, Fraternal Order of Police, Capital City Lodge No. 9 (hereinafter "FOP"), on behalf of its members against defendant, city of Columbus, wherein plaintiff sought relief as to the right to compensation of a police officer temporarily taking the place of a superior officer at a wage level for the higher position. Plaintiff also sought a court order directing defendant to amend the police salary ordinance to pay officers, acting in command, wages earned at the level set forth by the police salary ordinance, at the end of every pay period.

The trial court held that plaintiff, a non-profit corporation under R.C. Chapter 1702, had standing to bring the declaratory judgment action; that a police officer who has been temporarily appointed to a higher rank pursuant to departmental practices is entitled to the compensation so fixed by ordinance for such position; that the police officers under temporary appointment were already permanently employed at a lesser rank and, therefore, Civil Service Com-

1

mission Rule X(B)(2) does not apply; and that all salary claims by police officers which accrued after November 17, 1974 were allowed. Defendant filed a timely notice of appeal and raises the following assignments of error:

"1. The trial court erred in finding that appellee, a non-profit corporation, had standing to maintain an action for declaratory judgment as to the entitlement of some of its members, individual police officers, to increased compensation for temporary special duties not expressly provided for in the police salary ordinance.

"* * *."

In the city's first assignment of error, it claims that the trial court erred in finding that plaintiff had standing to invoke the court's jurisdiction. The trial court found standing in this case noting that plaintiff is a non-profit corporation under R.C. Chapter 1702, and, as such, it is a person under R.C. 2721.01 and may bring an action for declaratory judgment under R.C. 2721.03.

R.C. 2721.03 provides in part:

"*Any person* interested under a deed, will, written contract, or other writing constituting a contract, or *whose rights, status, or other legal relations are affected by a* constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, *municipal ordinance,* contract, or franchise, *may have determined any question of construction* or validity *arising under such* instrument, constitutional provision, statute, rule, *ordinance,* contract, or franchise and *obtain a declaration of rights, status, or other legal relations thereunder.*" (Emphasis added.)

The city claims that the finding of standing was erroneous for three reasons. First, plaintiff did not plead a personal right, status or other legal relationship affected by defendant's action as to Columbus City Charter, Section 15, the police manual, police salary ordinances or civil service rules. Second, plaintiff did not

allege that the challenged action caused it injury in fact. Third, there is no express authority authorizing plaintiff to bring this action on behalf of individual members of the FOP.

Conversely, plaintiff claims it has standing for two reasons. First, a labor union in the form of a non-profit corporation has an interest in litigating claims relating to the working conditions of its members. Second, a labor union is not required to expressly plead the statement that the labor union itself has suffered any injury in fact, as a result of defendant's actions. In other words, the FOP claims that it can sue in a representative capacity.

As to the first reason, plaintiff argues that this court recognized a labor union's direct, personal interest in litigating claims relating to the working conditions of its members in *Local Union No. 67, I.A.F.* v. *Columbus* (June 28, 1977), No. 76AP-950, unreported. However, in that case, the party was an unincorporated association that brought the action pursuant to R.C. 1745.01, which provides that an unincorporated association may sue on behalf of its members, thereby giving an unincorporated association specific statutory authorization to bring an action on behalf of its members. No such statutory authorization to bring an action for its members is set out in R.C. Chapter 1702.

The issue, then, is whether a non-profit corporation has standing to sue on behalf of its members without express statutory authorization. This court has recognized the right of an association to sue on behalf of its members in *State, ex rel. Connors,* v. *Ohio Dept. of Transp.* (1982), 8 Ohio App. 3d 44; and *Mechanical Contractors Assn.* v. *State* (Nov. 1, 1979), No. 79AP-405, unreported, affirmed (1980), 64 Ohio St. 2d 192 [18 O.O.3d 407]. In these cases, we have followed the reasoning of the United States Supreme Court as set out in *Warth* v. *Seldin* (1975),

422 U.S. 490. The *Warth* case involved three incorporated associations: Metro Act of Rochester, Inc.; Housing Council in the Monroe County Area, Inc.; and Rochester Home Builders Association, Inc. Although no standing was found the Supreme Court did not distinguish between incorporated and unincorporated associations and we conclude that, as long as the association meets the standards set forth in *Warth, supra,* and *Hunt* v. *Washington State Apple Advertising Comm.* (1977), 432 U.S. 333, a representative action may be brought. The United States Supreme Court, in interpreting a statute involving the term "associations of persons," in *United States* v. *Trinidad Coal & Coking Co.* (1890), 137 U.S. 160, at 169, stated:

"* * * The object of these restrictions as to quantity was, manifestly, to prevent monopolies in these coal lands. The reasons that suggested the prohibitions in respect to associations of persons apply equally to incorporated and unincorporated associations. But the purpose of the government would be defeated altogether, if it should be held that corporations were not 'associations of persons' within the meaning of the statute, and subject to the restrictions imposed upon the latter by sections 2347 and 2350. It is unreasonable to suppose that Congress intended to limit the right of entering coal lands to one hundred and sixty acres in the case of an individual, and to three hundred and twenty acres in the case of an unincorporated association, and leave the way open for an incorporated association, by means of entries made for its benefit in the names of its agents, officers, stockholders, employes and agents, to acquire public coal lands without any restriction whatever as to quantity. The language of the statute, to say nothing of the policy which underlies it, does not require or permit any such interpretation of its provisions. *The words 'association of persons' are often, and not inaptly, employed to describe a corpora-tion. An incorporated company is an association of individuals acting as a single person, and by their corporate name.* As this court has said, 'private corporations are but associations of individuals united for some common purpose, and permitted by the law to use a common name, and to change its members without a dissolution of the association.' *Baltimore and Potomac Railroad* v. *Fifth Baptist Church,* 108 U.S. 317, 330." (Emphasis added.)

Turning to the facts of this case, the police officers who are members of the FOP would have standing to sue in their own right and seek a declaration that the Columbus City Charter, police manual, and the Civil Service Commission Rules confer upon a police officer, who temporarily takes the place of a superior and assumes the rank of that officer, compensation at a wage level established by the police salary ordinance for such position. The wage issues raised by these actions are germane to plaintiff's purposes which include the betterment of existing conditions as they affect police officers, the enforcement of civil service laws as applied to police officers, and the enforcement of all laws, ordinances, rules and regulations protecting police officers. Finally, the complaint does not seek relief which requires individual participation in this suit. We find that plaintiff meets the requirements of *Warth, supra,* as to standing to sue. The first assignment of error is overruled. * * *

* * * The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings consistent with law and this opinion.

*Judgment accordingly.*

WHITESIDE, P.J., concurs.

MOYER, J., dissents in part.

4

WHITESIDE, P.J., concurring▮
\* \* \*As to the first assignment of error, I agree that the trial court did not err in permitting plaintiff, a labor union, to maintain this action on behalf of its members to have determined certain rights they have under the appropriate charter provisions, rules and ordinances. The fact that plaintiff is incorporated, rather than unincorporated, should give rise to no different common-law standing with respect to maintaining an action on behalf of its members for whose benefit it was formed and in light of the fact that its purpose is to represent those members with respect to their employment interests. The fact that the common-law rule has been codified with respect to unincorporated associations, but not as to incorporated associations, gives rise to no basis for abolishment of the common-law rule with respect to incorporated associations performing the same purpose and function as an unincorporated association. \* \* \*

Predicated upon the foregoing, I concur in the judgment affirming in part and reversing in part the judgment of the trial court and remanding the cause to that court for further proceedings.

MOYER, J., dissenting in part▮
\* \* \* I respectfully dissent from the majority's disposition of the first assignment of error.

While it is uncontroverted that plaintiff serves its members in various beneficial capacities, my review of R.C. 2721.03 and the case law defining the elements that must be considered in determining whether an association may represent its members in a legal action of this nature, causes me to conclude that plaintiff has no legal standing to represent some of its members in their individual claims against the city of Columbus for additional compensation. In *State, ex rel. Dallman,* v. *Court* (1973), 35 Ohio St. 2d 176 [64 O.O.2d 103], the Ohio Supreme Court, in holding that the superintendent of a correctional institution did not have standing to proceed with a writ of prohibition to stop an inmate from receiving shock probation, stated in its syllabus that: "A party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action." In its opinion, the court observed that the petition revealed no allegation that the superintendent had a personal stake in the outcome of the case. In the court's words:

"As stated in *Sierra Club* v. *Morton* (1972), 405 U.S. 727, 31 L.Ed. 2d 636, 641: '\* \* \* Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a "personal stake in the outcome of the controversy," *Baker* v. *Carr,* 369 U.S. 186 \* \* \* as to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Flast* v. *Cohen,* 392 U.S. 83 \* \* \*.' " *Id.* at 178-179.

In *Warth* v. *Seldin* (1975), 422 U.S. 490, the Supreme Court of the United States reviewed the principles of standing applicable to constitutional limitations on federal court jurisdiction and prudential limitations. The Supreme Court pronouncements on standing are important because our own Supreme Court has relied upon them. See *State, ex rel. Dallman,* v. *Court, supra.* In holding, *inter alia,* that Rochester Home Builders Association, whose members consisted of

several residential construction firms, could not intervene as a party plaintiff in a suit challenging a city's zoning ordinance on the ground that it excluded persons of low and moderate income from living and building in the town, the court held that, even though some of the members of the Home Builders Association would lose substantial business opportunities and profits, their interest was not enough to give standing to the association. The court stated that:

"* * * [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. * * * [Citations omitted.]" (*Id.* at 515.)

The court continued:

"The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. *Home Builders alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such.* Moreover, in the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, *and both the fact and extent of injury would require individualized proof.* Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf." (Emphasis added.) (*Id.* at 515-516.)

In 1977, the Supreme Court again reviewed the principles of standing as they applied to a state commission whose sole purpose was the promotion of Washington state apples. In *Hunt* v. *Washington State Apple Advertising Comm.* (1977), 432 U.S. 333, the Supreme Court held that the commission had standing to bring a declaratory and injunctive action challenging the constitutionality of a North Carolina statute which prohibited the display of Washington state apple grades on closed containers shipped into North Carolina. In concluding that the commission had standing, the Supreme Court found, *inter alia:* (1) the claim did not require individualized proof, (2) the interest of the commission itself would be adversely affected by the outcome of the litigation because the apple growers paid assessments to the commission which would be diminished if the apple growers sold less apples, and (3) the commission's attempt to secure the apple growers' right to publicize their grading system was central to the commission's purpose of protecting and enhancing the market for Washington state apples.

Whatever the merits may be of the claims of the individual police officers whom plaintiff seeks to represent in this case, it is clear that, if the test stated by the United States Supreme Court and the Supreme Court of Ohio is applied to the case before us, plaintiff does not have standing to assert those claims. Plaintiff's complaint alleges no injury to plaintiff. Nor is there an allegation or evidence that plaintiff, as a separate entity, has any interest in the cause of action of some of its members. Therefore, plaintiff fails to comply with the most frequently cited principle in determining whether a plaintiff has standing to sue in a representative capacity. Even in a declaratory judgment action, the plaintiff who is pursuing a cause of action in a representative capaci-

ty must allege not only that its members have been injured but that it, too, is injured or at least has a personal stake in the outcome of the controversy. *Hunt* v. *Washington State Apple Advertising Comm., supra; Warth* v. *Seldin, supra.*

Moreover, as the Supreme Court found in *Warth,* the damage claims in the case before us are not common to the entire membership or shared by all in equal degree. The injury suffered by any of the members of plaintiff by not being compensated commensurate with the duties they performed are peculiar to the individual member and would require individualized proof.

The Supreme Court of the United States and the Supreme Court of Ohio have provided us with fairly clear principles to be used in determining whether a person or an association has standing to pursue a cause of action in a representative capacity. The principles are unusually clear and straightforward and appear to me to unquestionably apply to plaintiff's pursuit of this cause of action on behalf of some of its members. The first assignment of error should be sustained and the judgment of the trial court reversed.