The STATE ex rel. COTTRILL et al., Appellees,

v.

MEIGS COUNTY BOARD OF MENTAL RETARDATION
AND DEVELOPMENTAL DISABILITIES, Appellee;

Ohio Department of Mental Retardation and Developmental
Disabilities et al., Appellants.

[Cite as *State ex rel. Cottrill v. Meigs Cty. Bd. of Mental Retardation
& Dev. Disabilities* (1993), 86 Ohio App.3d 596.]

Court of Appeals of Ohio,
Meigs County.

No. 471.

Decided March 2, 1993.

597

*Cloppert, Portman, Sauter, Latanick & Foley, Mark A. Foley* and *Grant D. Shoub,* for appellees Cottrill et al.

*Lee Fisher,* Attorney General, and *Jack W. Decker,* Assistant Attorney General, for appellants.

*Stege, Delbaum & Hickman* and *Franklin J. Hickman,* for appellee Meigs County Board of Mental Retardation and Developmental Disabilities.

*Law Offices of David S. Blaugrund, John W. Herbert* and *Waneta K. Buddelmeyer,* urging affirmance for *amicus curiae,* Ohio Association of County Boards of Mental Retardation & Developmental Disabilities.

---

GREY, Judge.

This is an appeal from the Common Pleas Court of Meigs County. The court granted an injunction ordering the Meigs County Board of Mental Retardation and Developmental Disabilities ("MRDD") to provide adequate physical and speech therapy for adults using the board's services and to continue the community work program for adults using MRDD's services. The court also granted mandamus requiring the Ohio State Board of Retardation to pay the shortfall for board. We affirm.

Cottrill, Rhoades, and Carleton, developmentally disabled citizens, are clients who use the facilities of MRDD. The Carleton School/Meigs Industries Education Association ("union") is a labor union that represents MRDD employees. MRDD told Cottrill and its other clients that, due to a lack of funds, there would be a cutback of state mandated programs. The union was informed there would be a corresponding layoff of union personnel.

Cottrill, Rhoades, Carleton and the union sued for injunctive relief asking that the court prohibit MRDD from terminating the state mandated services. They also pursued an action in mandamus asking that the State Board of Mental Retardation pay the MRDD shortfall. Carleton and Rhoades were subsequently dismissed and the case was changed to a class action suit with Cottrill acting as class representative.

The suit named MRDD, the Board of County Commissioners of Meigs County, the State Department of Mental Retardation and Developmental Disabilities ("ODMRDD") and Jerome C. Manuel, who is the Director of ODMRDD. The county commissioners were dismissed because they provided all of the funds

required under the statute. MRDD filed an answer and cross-claim, joining the mandamus action against Manuel and ODMRDD.

The court granted the injunction and required MRDD to continue providing the mandated services, *i.e.,* physical and speech therapy for adults and the community work program. The court also granted mandamus, and required ODMRDD to pay the MRDD shortfall.

ODMRDD appeals. An *amicus curiae* brief has been submitted by the Ohio Association of County Boards of Mental Retardation and Developmental Disabilities.

ODMRDD assigns the following error:

"FIRST ASSIGNMENT OF ERROR

"The trial court erred when it found that R.C. § 5123.351 creates a nondiscretionary duty in the director of ODMRDD to provide funding on demand for MRDD boards whenever local funding sources are insufficient."

ODMRDD asserts that R.C. 5123.351 is discretionary with the director.

R.C. 5123.351 states:

"The director of mental retardation and developmental disabilities with respect to the eligibility for state reimbursement of expenses incurred by facilities and programs established and operated under Chapter 5126. of the Revised Code for mentally retarded and developmentally disabled persons, *shall*:

" * * *

"(C) Review and evaluate community programs and make recommendations for needed improvements to county boards of mental retardation and developmental disabilities and to program directors;

"(D) Withhold state reimbursement, in whole or in part, from any county or combination of counties for failure to comply with Chapter 5126. or section 5123.35 or 5123.351 of the Revised Code or rules of the department of mental retardation and developmental disabilities;

" * * *

"(F) Provide consultative staff service to communities to assist in ascertaining needs and in planning and establishing programs;

"(G) Establish, operate, develop, and fully support a clinic or other mental retardation programs in an area where he determines that services are urgently needed but local funds for the support of the program are not available;

"(H) Provide state funds to county boards of mental retardation and developmental disabilities, in addition to those allocated pursuant to section 5123.36 of

the Revised Code, for special programs or projects *he considers necessary,* but for which local funds are not available;

"(I) Provide state funds for existing mental retardation clinics and programs financed partly by state funds when *he considers* it *necessary.*" (Emphasis added.)

ODMRDD argues that, under Sections (G) and (H), discretion rests solely in the director. It further argues that, since MRDD is out of compliance as specified in Section (D), the director should withhold funds. We disagree.

"A board of county commissioners that appropriates funds for the county MRDD but is simply unable to supply that agency with sufficient funds does not violate R.C. 5126.05, because R.C. 5123.351 provides that the state share in the responsibility for such funding when sufficient funds are unavailable from the county. Thus, the state can and should augment county appropriations under R.C. 5123.351(G), (H), and (I), and thereby assist a county suffering financial straits." *Jackson Cty. Bd. of Mental Retardation & Dev. Disabilities v. Bd. of Commrs. of Jackson Cty.* (1990), 49 Ohio St.3d 63, 65, 551 N.E.2d 133, 135.

The record shows that the Meigs County voters defeated four tax levies designated for MRDD. The record also shows that the commissioners gave all appropriated funds to MRDD as required under R.C. 5126.05(I) but MRDD was still unable to meet its budget without curtailing state mandated programs.

Manuel said he had no firsthand knowledge of the conditions in Meigs County and neither he nor any of his staff had done anything to investigate the problem. He agreed that Lee Wedermeyer, the MRDD Board Executive Director, had done everything possible to obtain whatever state funds might be available.

Manuel said, while there were extra funds under his discretion, he had already earmarked those funds for other purposes. He also stated that he had not gone to the Office of Budget Management to request additional funds for MRDD nor would he go, because, as far as he was concerned, MRDD had received all of its entitlements.

The record shows that the Meigs County MRDD program was, at one time, a model for small counties across the state and that Manuel considered the subject programs necessary to remain in compliance. He said he assumed they were in compliance based on the 1989 METT and, if they were not in compliance, he would find out why. The record shows that MRDD was not in compliance as of June 3, 1991, because it did not have sufficient staff to provide community employment services, mobility evaluations, communication evaluations and communication and motor skills.

The clear implication of the Supreme Court in *Jackson* is that the director should do something, provided that state money is available. The record shows that Manuel, despite being aware of the problem, did nothing. The record also shows that Manuel had additional funds which could be used in the event of an emergency. We find *Jackson, supra,* controlling.

ODMRDD's first assignment of error is not well taken and is overruled.

"SECOND ASSIGNMENT OF ERROR

"The trial court erred when it found that members of the plaintiff class have a constitutional right to compel ODMRDD to provide funding to an MRDD board whenever local funding sources are insufficient to provide services determined to be appropriate."

ODMRDD asserts that the court erred in determining Cottrill was denied procedural due process, substantive due process and the equal protection of the laws.

█ Benefits promised under state law confer a property interest in the recipients which is protected by the due process clause. *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494.

R.C. 5123.62 describes the rights of mentally retarded and disabled persons and lists, among other things, "the right of access to necessary ancillary services including, but not limited to, occupational therapy, physical therapy, speech therapy, and behavior modification and other psychological services; the right to participate in appropriate programs of education, training, social development, and habilitation and in programs of reasonable recreation." The Fourteenth Amendment prohibits depriving a citizen of a property interest without due process of law.

█ The record shows that, without sufficient funds, the clients of MRDD, who have been receiving the state mandated services, will no longer be afforded their rights as enumerated in R.C. 5123.62. Here, there was no hearing as required under the tenets of due process of law. See, *e.g., Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. As such, the court's conclusion that the clients were denied procedural due process of law was not error.

The ODMRDD next asserts there is no unqualified requirement that the state provide supplemental funding for MRDD and, therefore, the court erred in finding a substantive due process violation.

█ The question is not whether there is an unqualified requirement that the state provide supplemental funding. The question is whether, once a right has been mandated by the legislature for qualified recipients, the state may deny it to some while continuing to offer it to others who are similarly situated. The

question is not whether the state should fund a program which surpasses the required minimum. The question is whether the state may provide funds for programs which will meet the minimum requirements in some counties and deny funds to other counties. Clearly, it may not. *Jackson, supra.*

We do not find any authority which justifies eliminating state mandated benefits based on the inability of a county to provide them at the local level.

■ ODMRDD also asserts that the court erred in finding a denial of equal protection of the laws. Equal protection is violated when one group of citizens is denied state mandated benefits normally inuring to all parties who are similarly situated. The people who currently use the services of MRDD boards throughout the state of Ohio are not being treated equally. Those in more affluent counties are assured of the state mandated minimum services, while those in poorer counties are denied the same services. Equal protection of law means that people will be treated equally regardless of the county in which they choose to live.

The ODMRDD's second assignment of error is not well taken and is overruled.

"THIRD ASSIGNMENT OF ERROR

"The trial court erred when it issued a writ of mandamus and/or mandatory injunction requiring ODMRDD to provide certain funding to the MRDD board when to do so was impossible."

■ ODMRDD argues that the court's order was imprecise. This imprecision is grounded in the terms "mandatory injunction" and "mandamus." ODMRDD also asserts impossibility of performance.

A writ of mandamus is a court order compelling action, whereas an injunction is a court order directing that a party not perform a specified act. *State ex rel. Smith v. Indus. Comm.* (1942), 139 Ohio St. 303, 306, 22 O.O. 349, 350, 39 N.E.2d 838, 839. The tenor of the court's orders are that MRDD must refrain from terminating the state mandated programs (injunction) and that the state must pick up the shortfall (mandamus). Here, if any error exists, it is harmless.

■ ODMRDD next asserts impossibility of performance. Judgments supported by some competent, credible evidence going to all the elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857.

■ Joyce Toms, the Chief Fiscal Officer for ODMRDD, stated there were additional funds in several accounts. Manuel also stated there were additional funds in several accounts. Both Manuel and Toms said they had not requested

the Ohio Department of Budget Management for a transfer of funds to MRDD. The record justifies the court's finding that although there are other programs on which ODMRDD might prefer to spend those funds, that spending is discretionary but the programs MRDD sought funds for were mandated programs.

We note here, parenthetically, that the legislature does a lot more mandating than it does appropriating. This court does not fault ODMRDD, or the Meigs County MRDD, and recognizes that each agency is trying to do the best it can under the current appropriation. In a similar vein, this court can only do what it can under the current state of the law. We further recognize that our decision here will not resolve the underlying problem and that an ultimate resolution awaits legislative action. Nonetheless, we must apply the law as it is now.

ODMRDD's third assignment of error is not well taken and is overruled.

"FOURTH ASSIGNMENT OF ERROR

"The trial court erred when it found the Union to have any standing or to have brought any cognizable claims in this action."

The state contends that the union did not have standing to maintain the suit and should have been dismissed since they were not a member of the injured class. Neither *amicus curiae*, Ohio Association of County Boards of MRDD, nor defendant-appellee, MRDD, address this issue. Plaintiffs-appellees place their reliance in *Fraternal Order of Police v. Columbus* (1983), 10 Ohio App.3d 1, 10 OBR 6, 460 N.E.2d 639, which stands for the proposition that an organization has standing to sue on behalf of its members.

In a class action suit, one member represents the entire group in litigating a claim that affects all members in some common way. Civ.R. 23(A)(3) and (4). See, also, James & Hazard, Civil Procedure (3 Ed.1985) 563, Section 10.20. The union would a very liberal permissive joinder.

"All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or succession or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Civ.R. 20(A).

The relief sought in this action was to require ODMRDD to fund the mandated services and since the union is contractually bound to perform such services and its members are the people who actually work with the mentally retarded, they have an interest in litigation. In any event, we cannot see how ODMRDD was prejudiced in any way by the union's participation. If this was error, it was harmless at most. As such, we find the trial court did not err by allowing the union to participate as a party. *FOP, supra.*

ODMRDD's final assignment of error is not well taken and is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON, J., concurs.

HARSHA, J., concurs in judgment only.

STEPHENSON, Judge, concurring.

I concur in the judgment of the principal opinion on the grounds that the Supreme Court has directed that "the state *can and should* augment county appropriations under R.C. 5123.351(G), (H), and (I)." (Emphasis added.) *Jackson Cty. Bd. of Mental Retardation & Dev. Disabilities v. Bd. of Commrs. of Jackson Cty.* (1990), 49 Ohio St.3d 63, 65, 551 N.E.2d 133, 135.

HARSHA, Judge, concurring in judgment only.

Appellants' first assignment of error asserts that the trial court erred when it determined that R.C. 5123.351 creates a mandatory duty on the director of ODMRDD to provide funding on demand whenever local funding sources are insufficient. I am not persuaded that the trial court held that such a mandatory duty exists "whenever local funding sources are insufficient." R.C. 5123.351(G), (H), and (I) afford the director some discretion in determining whether programs are "necessary" or "urgently needed." A close review of the trial court's findings of fact indicates that it expressly determined that the director had "abused his discretion in failing to take any action whatsoever to provide additional funds" to MRDD. Therefore, the trial court did not erroneously fail to recognize the director's statutory discretion. Moreover, the trial court's finding of an abuse of discretion was supported by the director's admission that he had made no determination whether it was necessary to give additional state funds to MRDD. The failure to exercise his discretion undoubtedly constituted an abuse of discretion. See, *e.g.*, *Wolfe v. Wolfe* (Nov. 22, 1989), Pickaway App. No. 88CA18, unreported, 1989 WL 145455.

Furthermore, there was sufficient evidence before the trial court for it to determine that the funds requested by MRDD were both "necessary" and "urgently needed." Finally, appellants failed to establish that MRDD could not be funded without taking money from other mental retardation offices and rendering them unable to perform their statutory duties. *State ex rel. Weaver v. Lake Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d 204, 207, 580 N.E.2d 1090, 1093–1094.

Since mandamus is properly based in this case on appellants' violation of state law, *i.e.*, abuse of discretion, I would overrule appellants' second assignment of error solely on the basis that it is moot pursuant to App.R. 12(A)(1)(c).