OPINION
Concerned Citizens of Spring Valley, Inc. and two individual persons (collectively, "CCSV") appeal from a judgment of the court of common pleas affirming a decision of the Spring Valley Township Board of Zoning Appeals ("the Board"). The Board granted an application by American Aggregates Corp., doing business as Martin Marietta ("Martin Marietta"), requesting a conditional use permit to construct and operate a gravel mine. The proposed site for the mine is located on approximately 200 acres of agricultural land situated along the Little Miami River in Spring Valley Township.
On February 4, 2000, Appellee Martin Marietta filed an application with the Board seeking a conditional use permit to operate a gravel mine. The Board held six public hearings from March until June 2000 to determine whether the conditional use permit should be granted. The hearings were conducted in a quasi-judicial manner, with the parties proceeding in much the same manner as in a civil trial.
Martin Marietta bore the burden of proof, so it presented its case first and was later afforded an opportunity for rebuttal after the close of CCSV's case. Each party was provided an opportunity to present lay and expert testimony, to cross-examine witnesses, to offer evidence and exhibits, and to make objections. In all, there were more than twelve hours of hearings, fifty-five witnesses, and 1000 pages of exhibits. The hearings produced 500 pages of transcript.
On June 26, 2000, the Board voted 3-2 to grant the conditional use permit to Martin Marietta. The permit is subject to thirty-one conditions imposed by the Board to assure public health, safety and welfare of the citizens of the township, as well as to protect the area's character and resources.
CCSV appealed the Board's decision granting the conditional use permit to the court of common pleas pursuant to R.C. Chapter 2506. Martin Marietta moved to remove CCSV as a party for lack of standing. On March 23, 2001, after the issues involved in the application had been fully briefed, the trial court granted the motion and ordered CCSV removed. The appeal proceeded with Appellants Denis Thomas and Daniel Fouke, residents of Spring Valley, appearing as parties in support of the appeal. On April 25, 2001, the trial court sustained the decision of the Board to grant the conditional use permit.
CCSV filed timely notice of appeal. Five assignments of error are presented.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT MISSTATED AND MISAPPLIED THE APPROPRIATE STANDARD OF REVIEW AND BURDEN OF PROOF FOR THE ADMINISTRATIVE APPEAL OF A BOARD OF ZONING APPEAL DECISION.
CCSV argues that the trial court employed an improper standard of review when it decided CCSV's R.C. Chapter 2506 appeal from the Board's decision. Under the "Standard of Review" heading in its decision, the trial court cited Haley v. Ohio St. Dental Bd. (1982), 7 Ohio App.3d 1, for the proposition that "[i]f there exists some reliable probative, and substantial evidence in support of the agency finding, then that is sufficient to support such findings."
The trial court did misstate the applicable standard of review when it cited the Haley standard, which applies in R.C. 119.12 licensure appeals. That section requires affirmance when there is some reliable, substantial, and probative evidence supporting the agency's decision. R.C. 2506.04 requires a finding, inter alia, that the agency's decision is supported by a preponderance of that evidence. However, a careful review of the trial court's decision reveals that it in fact applied the R.C. 2506.04 standard. Indeed, the court specifically cited it as the standard it would apply, and concluded:
 "[t]herefore, the Court finds that all of the criteria in section 1002.2 of the Spring Valley Township Zoning Resolutions have been met by a preponderance of substantial, reliable and probative evidence."
Additionally, we will address an issue which garnered little attention in the parties' briefs, but became a focus of concern at oral argument.
CCSV alleged in a footnote contained in its brief that a Zoning Board member "voted in favor of approval because [Martin Marietta] had `informally' promised payments to the Township off the record!" CCSV cites the affidavit of Polly Staley for this proposition, which it submitted to the trial court and the court admitted into evidence pursuant to R.C. 2506.03.
Polly Staley stated in her affidavit that after the Board had voted to approve the conditional use permit she approached a Board member, David Wisecup, and "asked him why he voted to approve the application." In response, "Wisecup stated that he voted in favor of the application because the applicant had informally agreed to pay the Township $0.05 per ton of gravel processed at the site. Mr. Wisecup further stated that the Township expects to generate $15,000.00 per year in revenues from this informal agreement." Staley stated that Wisecup said that the Board had not put the agreement in writing "because a written agreement would look like a `pay-off.'"
The substance of the Staley affidavit raises serious concerns. If a Board member's vote was influenced by a secret side agreement, even one from which he derives no personal benefit, the principle of open and public proceedings is violated. Indeed, a question arises whether a zoning regulation, which involves an exercise of the police power, ought to be enacted in exchange for some economic benefit. The trial court did not address the Staley affidavit when it rendered its decision. CCSV argues that it should have.
The Ohio Constitution, at Article IV, Section 4(B), limits the subject matter jurisdiction of the courts of common pleas to that which is provided by statute. The General Assembly has narrowly confined the jurisdiction of the courts of common pleas in R.C. Chapter 2506 appeals from the decisions of administrative agencies. In hearing the appeal, the court is confined to the matters appearing in the transcript of the proceeding before the agency, unless one of the circumstances specified by R.C. 2506.03 is put before the court by affidavit. Dvorak v. Mun. Civil Services Comm. (1976), 46 Ohio St.2d 99. Where such an affidavit is filed, the court must consider its contents in disposing of the case. Id. Concomitantly, the court may not on its own authority consider an affidavit which contains other matters for which R.C. 3506.03 does not provide without offending the separation of powers principle implicit in Article IV, Section 4(B) by creating new jurisdiction for itself.
R.C. 2506.03(A) provides that the trial court may supplement the record when one of the following applies:
 (1) The transcript does not contain a report of all evidence admitted or proffered [sic] by the appellant;
 (2) The appellant was not permitted to appear and be heard in person, or by his attorney, in opposition to the final order, adjudication, or decision appealed from, and to do any of the following:
 (a) Present his position, arguments, and contentions;
 (b) Offer and examine witnesses and present evidence in support;
 (c) Cross-examine witnesses purporting to refute his position, arguments, and contentions;
 (d) Offer evidence to refute evidence and testimony offered in opposition to his position, arguments, and contentions;
 (e) Proffer any such evidence into the record, if the admission of it is denied by the officer or body appealed from.
(3) The testimony adduced was not given under oath;
 (4) The appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from or the refusal, after request, of such officer or body to afford the appellant opportunity to use the power of subpoena when possessed by the officer or body;
 (5) The officer or body failed to file with the transcript, conclusions of fact supporting the final order, adjudication, or decision appealed from.
 If any circumstance described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. At the hearing, any party may call, as if on cross-examination, any witness who previously gave testimony in opposition to such party.
The allegations of the Staley affidavit concerning the alleged secret agreement clearly fits none of the foregoing classifications. Therefore, the trial court did not err when it failed to consider the Staley affidavit in rendering its decision on the appeal. The concerns which Judge Young raises in his concurring opinion are good ones. If there was such an agreement, the public ought to have been told of it. However, the Zoning Board's failure to do that and the remedies for such a failure, if there was one, is not judicial but political; removal of the Board members or those responsible for their appointment. The judicial power which the courts exercise cannot be employed to resolve political issues, and to do so risks its condemnation as "activist."
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN "SUSTAINING" THE DECISION OF THE [BOARD] BELOW IN THE ABSENCE OF A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE OFFERED BY APPLICANT TO MEET THE MANDATORY PRECONDITIONS FOR ISSUANCE OF A CONDITIONAL USE PERMIT
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN CONCLUDING THAT THE PROPOSED LAND USE WAS COMPATIBLE WITH THE REQUIREMENTS OF THE GREENE COUNTY LAND USE PLAN, I.E., THE PROPOSED GRAVEL PIT WAS PLACED IN AN AREA DEFINED AS PRIME AGRICULTURAL FARMLAND
The courts of common pleas are authorized by R.C. 2506.01 to review the orders and decisions of administrative boards and tribunals.
R.C. 2506.04 governs the court's review, and provides:
 The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings of opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code.
The Ohio Supreme Court recently had an opportunity to formulate a standard for appellate review of a final judgment or order entered by a court of common pleas in an R.C. Chapter 2506 appeal of an administrative agency's decision. The court stated:
 The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "more limited in scope." (Emphasis added.) Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 30, 465 N.E.2d 848, 852. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267.
Henley v. Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142,147.
We must affirm the trial court unless we find that the court's decision is not supported by a preponderance of reliable, probative and substantial evidence as a matter of law. Smith v. Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608 (citing Kisil v. Sandusky (1984),12 Ohio St.3d 30, fn. 4). In administrative appeals pursuant to R.C.2506.04, within the ambit of "questions of law" for appellate review is whether the trial court abused its discretion. Henley, supra; Kisil, supra. Therefore, we will employ the abuse of discretion standard in determining the error assigned. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
CCSV argues that the trial court abused its discretion when it found that a preponderance of substantial, reliable, and probative evidence supports the Board's findings with respect to four sections of the Spring Valley Township Zoning Resolution ("SVTZR"), which imposes conditions governing issuance of conditional use permits. The land is zoned for agricultural use, but the SVTZR permits mining as a conditional use when certain conditional criteria are satisfied. The Board found that they were, and the trial court affirmed the Board. The particular sections of the SVTZR at issue are discussed below.
A. SVTZR 1002.2(c) states:
 The use will be designed, constructed, operated, and maintained so that it shall not cause substantial injury to the value of the property in the area or neighborhood where it is to be located.
The Board and the trial court relied on a study conducted by Willingham Associates, Inc., which concluded that "proximity to aggregate mines is not a deterrent to development, do not cause diminution in value, and do not result in neighborhood characteristics that are incompatible with residential or other uses."
The Willingham Associates study first collected data regarding sales of residential real property located within the immediate area surrounding an existing mining operation in Fairfield, Ohio. Then the study examined similar residential sales in the Fairfield area but unaffected by the mining operation and compared this data to the sales within the area of the mine. The data revealed that the average annual appreciation of the homes within the area of the mine was 5.11%, while outside of the area of the mine the appreciation was just slightly higher, 5.28%. This data, along with similar findings in studies in Columbus, Ohio, and Louisville, Kentucky, led Willingham Associates to conclude that proximity to aggregate mines do not affect property values.
Thomas Willingham, the president of Willingham Associates and a certified appraiser, testified under oath before the Board on two occasions. On March 27, 2000, Willingham presented the study and fielded questions from Spring Valley residents. On June 5, 2000, Willingham defended his study during Martin Marietta's rebuttal case, and while there was opportunity to ask him questions after his presentation, no one did so.
Appellants attack the study, citing alleged faults in methodology and in the size of the sample from which the data was gathered. These matters go to the credibility and weight of the evidence, which are primarily for the trial court to determine. Henley, supra. We cannot find as a matter of law that the trial court abused its discretion when it held that a preponderance of substantial, reliable, and probative evidence before the Board supported its finding that Martin Marietta had satisfied the requirements of SVTZR 1002.2(c).
B. SVTZR 1002.2(b) states:
 The use will not result in the destruction, loss or damage of a natural, scenic, or historic feature of major importance.
CCSV asserts that the site of the proposed mine "exists at the confluence of the Little Miami River, the Rails to Trails bike trail, a specially designated scenic U.S. Highway and a historic downtown district listed on the National Register." These sites may be damaged by the proposed mine, according to CCSV. CCSV also complains that Martin Marietta failed to present evidence regarding the archaeological value of the site.
Eric Partee of Little Miami, Inc., a conservation group focused on the preservation of the Little Miami River, testified that the Martin Marietta plan called for a 250 foot buffer zone between the river and the mine and for other safeguards to protect the river. Partee concluded that the mine would not destroy natural, historic, or scenic features of the river. The trial court found this evidence substantial, reliable, and probative, noting that the Board found Partee's testimony particularly convincing inasmuch as the goal of his organization is to protect the river.
The Board also noted that, other than the Little Miami River, there are no natural, scenic, or historical features on or immediately adjacent to the proposed site because the Village of Spring Valley, a small park, and the bike path are on the opposite side of the Little Miami River. In addition, while the scenic highway, State Route 42, abuts the site for a short distance, Martin Marietta will construct mounds to shield Route 42 and all other public streets, parks and the Village from the mine.
Finally, the trial court discounted the letters submitted by a museum curator and a university anthropologist which discussed the archaeological value of the site because the letters were not subject to cross examination.
After reviewing this evidence, we cannot find that the trial court, as a matter of law, abused its discretion when it held that the Board had properly found that Martin Marietta satisfied SVTZR 1002.2(b) by a preponderance of substantial, reliable, and probative evidence.
C. SVRTZ 1002.2(f) states:
 The use will not create excessive additional requirements at public cost for public facilities and services and will not be detrimental to the economic welfare of the community.
The record demonstrates that the Board found it persuasive that Martin Marietta would make road improvements in conjunction with the construction of the mine and that the mine would produce an estimated $107,000 per year in real property taxes, while the current use of the land produced less than $1000 per year in property taxes. We cannot find, on this record, that the trial court's affirmance of the Board's determination pursuant to SVTZR 1002.2(f) was an abuse of discretion.
D. The Greene County Land Use Plan was incorporated into section 1002.2(j) of the SVTZR, which states:
 The use is compatible with the standards, objectives, and policies of Perspectives: A Future Land Use Plan for Greene County, Ohio
In the third assignment of error, CCSV argues that the trial court erred in sustaining the Board's issuance of the conditional use permit because the proposed use was not compatible with the Greene County Land Use Plan. CCSV argues that the land is classified as "prime agricultural farmland" which, under the auspices of the Land Use Plan, may only be used for residences and agriculture.
The Board heard testimony from Dr. Steven E. Petrie, a soil scientist, regarding the condition of the soil. Dr. Petrie testified that land involved is not prime agricultural land and that the soil is less productive than the Greene County average. An individual who farmed the land for ten years concurred with Dr. Petrie's assessment.
Greg Dale, an urban planning expert, testified that the term "prime agricultural" is simply the title of the district, not a soil analysis. Dale also pointed out that mining is a permitted use even in prime agricultural districts subject to conditions. Dale also testified that the presence of the mine would not have an adverse impact on surrounding agricultural activities.
On this record, we again cannot find that the trial court abused its discretion when if sustained the Board's determination regarding SVTZR 1002.2(j).
In summary, we find that the trial court properly found that these criteria, as well as the remaining criteria found in SVTZR 1002.2, are satisfied by a preponderance of substantial, reliable, and probative evidence.
The second and third assignments of error are overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN CONCLUDING THAT THE MANNER OF HANDLING EVIDENCE AND THE CONDUCT OF HEARING WAS FAIR INSOFAR AS APPELLANTS WERE DENIED THE OPPORTUNITY TO PRESENT AND OPPOSE EVIDENCE
CCSV argues that the Board improperly excluded evidence, discouraged testimony from residents that included opinions and concerns, and denied CCSV opportunity to rebut new evidence that Martin Marietta presented during its rebuttal case.
In In re Elizabeth Township Bd. of Zoning Appeals (Sept. 28, 1994), Miami Co. App. No. 93-CA-62, unreported, we found that
 [a]s a general rule, administrative agencies are not bound by the strict rules of evidence. Thus, the hearsay rule is relaxed in administrative proceedings and the admission and consideration of hearsay evidence is not necessarily improper. However, an administrative agency may not arbitrarily consider hearsay evidence. Aley v. Ohio St. Dental Bd. (1982), 7 Ohio App.3d 1. Thus, the crucial question in determining whether an administrative agency acted improperly in considering hearsay evidence is not whether such evidence was in fact considered, but whether such evidence was considered in an arbitrary fashion.
Id. at **2.
The trial court applied five factors that we advanced in In re Elizabeth Township, supra, and F H Partnership v. Royce (March 24, 2000), Miami Co. App. No. 99-CA-16, unreported, to determine whether hearsay evidence was considered in an arbitrary manner. They are:
 (1) whether any party objected to the hearsay, (2) whether both sides took advantage of liberalized evidentiary rules regarding hearsay, (3) whether the hearsay admitted carried an indicia of reliability, * * * (4) whether the board blindly accepted the accuracy of the hearsay evidence[, and (5)] whether the hearsay evidence concerns collateral matters or matters central to the outcome of the proceedings.
F H Partnership, supra, at **5.
Applying these factors, the trial court determined that the Board did not act in an arbitrary manner when it excluded hearsay evidence. We agree. The trial court found that the Board evaluated all of the evidence and gave proper weight to the evidence which it deemed probative and reliable. The Board did not exclude any evidence except exhibits offered during closing arguments, letters received from outside the hearings, and a videotape that had no indicia of reliability. We cannot find that the Board arbitrarily considered hearsay evidence, or acted unfairly in any way.
Regarding the Board's alleged suppression of opinion testimony, the trial court found that the Board encouraged people to offer testimony but that it desired to elicit only that testimony which it could use to decide the questions before it. That restriction fit the character of the proceedings. There is no doubt that the opponents of the mine had ample opportunity to present their case and that the Board was aware of their strong opposition to Martin Marietta's proposed use of the site as a gravel mine.
Finally, CCSV argues that the opponents of the mine should have been given opportunity to respond to Martin Marietta's rebuttal evidence. The trial court found that since Martin Marietta bore the burden of proof, it properly had the last opportunity to present evidence. The evidence introduced during the rebuttal phase, such as testimony regarding soil productivity, water quality, property values, and a study regarding a mine in Columbus, did not present new issues, but rather rebutted evidence on the same issues presented to the Board by CCSV. Therefore, the Board acted properly when it denied CCSV's request to rebut Martin Marietta's rebuttal evidence on a claim that it constituted "new evidence."
In sum, the trial court did not abuse its discretion when it found that CCSV was given a fair hearing. Accordingly, the fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DISMISSING CONCERNED CITIZENS OF SPRING VALLEY, INC. AS AN APPELLANT
As noted above, the trial court dismissed CCSV on March 23, 2001, finding that the group lacked standing. This occurred after the appeal to the trial court had been fully briefed. On April 25, 2001, the trial court filed its decision sustaining the Board's granting of the conditional use permit.
In Northern Woods Civic Assoc. v. City of Columbus Graphics Commission (1986), 31 Ohio App.3d 46, the Tenth District Court of Appeals had the opportunity to address a similar situation. It held that a non-profit corporation lacked standing to appeal pursuant to R.C. 2506, stating:
 However, representation by a nonprofit corporation or unincorporated association does not extend to the right of appeal afforded by R.C. Chapter 2506 since the right to appeal thereunder is conferred only upon the person directly affected by the administrative decision.
Id., at syllabus.
The trial court applied and followed the rule of Northern Woods when it removed CCSV as a party. Martin Marietta urges us to do the same. We have reservations, however.
The action authorized by R.C. 2506.01 is in the nature of an action for declaratory judgment. It provides that the administrative order appealed means a "decision that affects the legal relationship of a person." The section does not expressly limit its application to natural persons. It has been held to permit an appeal by an elector who acts as an agent for persons who have signed a petition. In re Carlisle Ridge Village (1968),15 Ohio St.2d 177. It might likewise apply to a corporation, a legal fiction which is nevertheless a person in the eyes of the law. Generally, corporations are permitted to act as natural persons do unless specifically prohibited from doing so. They are also permitted to seek declaratory judgments. See Capital City Lodge No. 9 v. City of Columbus (1983), 10 Ohio App.3d 1.
CCSV is a non-profit corporation that represents individuals opposed to the proposed mine. CCSV argues that the trial court erred when it dismissed it as a party. However, it is clear that CCSV's opportunity to oppose the proposed use was not prejudiced by the trial court's dismissal of CCSV. The matter had already been fully briefed to the trial court before CCSV was dismissed, and CCSV participated fully in this appeal. Even the appellants concede that the dismissal of CCSV had "no impact" on the merits of the R.C. Chapter 2506 appeal. Therefore, any error that the trial court may have committed by dismissing CCSV is harmless.
The fifth assignment of error is overruled.
 Conclusion
Having overruled each assignment of error presented, we will affirm the judgment from which the appeal was taken.
FAIN, J. concurs. YOUNG, J., concurs separately.